UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EXERGY DEVELOPMENT GROUP OF IDAHO, LLC, and Idaho limited liability company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FAGEN, INC., a Minnesota corporation; MIDWEST ETHANOL TRANSPORT, LLC, a Minnesota limited liability company, BIG BLUE WIND FARM, LLC, a Minnesota limited liability company, and JOHN AND JANE DOES 1-10,<br><br>　　　　Defendants. | Case No. 1:15-CV-00566-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

　　Pending before the Court are Defendants' Motions to Dismiss. (Dkt. 19, 24.) The parties filed responsive briefing and the motions are now ripe. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motions shall be decided on the record before this Court without oral argument. The Court grants Defendants' Motions.

MEMORANDUM DECISION AND ORDER - 1

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Exergy Development Group of Idaho, LLC ("Exergy"), is in the business of renewable energy. (Dkt. 13.) Between 2006 and 2012, Exergy was developing and assembling a wind-power renewable energy generation project in Minnesota, known as the Big Blue Project. (Dkt. 13.) Defendant, Big Blue Wind Farm, LLC ("Big Blue"), owned all assets of that project. (Dkt. 13.)[1] From 2006 to 2011, Exergy advanced money to Big Blue to fund development of the project. (Dkt. 13.) Promissory Notes were signed annually from 2006 to 2011 memorializing the amounts Exergy advanced for development of the project. (Dkt. 13.) No promissory note was signed in 2012. (Dkt. 13.)

Defendant Fagen, Inc. ("Fagen") began advancing funds to Exergy for the Big Blue Project in 2011 through a series of Term Loans. (Dkt. 13.) In 2012, Exergy requested more financing, which led to Fagen and Exergy signing a Purchase Agreement, among other documents. (Dkt. 13.) The Agreement required Exergy to convey 99 of the 100 units of membership in Exergy Minnesota in exchange for Fagen reducing the principal and accrued interest due under the Term Loans by $11,447,503.03. In addition to the Purchase Agreement, the parties also signed a Member Control Agreement that gave Exergy a repurchase option. (Dkt. 13.) When Exergy did not exercise the repurchase option, the final unit of Exergy Minnesota was transferred and Fagen assumed managerial control over Exergy Minnesota and ownership of Big

---

[1] Big Blue Wind Farm, LLC was wholly owned by Exergy Minnesota, which was a wholly owned subsidiary of Exergy during this time frame.

MEMORANDUM DECISION AND ORDER - 2

Blue. (Dkt. 13.) Fagen transferred ownership of Big Blue to Defendant Midwest Ethanol Transport, LLC ("MET") in late 2012.

Fagen and Exergy entered into a Memorandum of Understanding ("MOU") on December 20, 2011, which related to several projects including the Big Blue Project.[2] (Dkt. 13.) In the MOU, Exergy agreed to continue using Fagen as the contractor on its projects. (Dkt. 13, 19.) Exergy then began developing a collection of projects with Fagen as its contractor.[3] (Dkt. 13.) Fagen ceased performance on further financing under the MOU when Exergy failed to pay Fagen for its work. (Dkt. 13, 19.)   Fagen and MET sued Exergy in Minnesota federal district court for its failure to pay, which remains pending[4].

On December 4, 2015, Exergy filed a Complaint in this matter and then later filed its Amended Complaint alleging: (1) breach of contract against all named defendants; (2) unjust enrichment/quantum meruit against all defendants; (3) breach of contract against Fagen; and (4) breach of fiduciary duties against Fagen. Defendants filed a Motion to Dismiss all counts on various theories, which the Court now takes up.

---

[2] The MOU also identified the Idaho Six Winds Project and seven Exergy Project Companies, including Lava Beds Wind Park, LLC, Notch Butte Wind Park, LLC, Cottonwood Wind Park, LLC, Deep Creek Wind Park, LLC, Salmon Creek Wind Park, LLC, Rogerson Flats Wind Park, LLC, and Jack Ranch Wind Park, LLC. (Dkt. 19).

[3] Those projects included Jack Ranch and the Lava Beds project.

[4] *Fagen, Inc. v Exergy Development Group of Idaho, LLC,* 12-cv-2703 (D. Minn.).

MEMORANDUM DECISION AND ORDER - 3

## DISCUSSION

**1.      Defendants' Motion to Dismiss Breach of Contract claim under 12(b)(3)**

In Count I, Exergy claims Defendants committed a breach of contract by failing to pay back the full principal and interest owed under the Promissory Notes when Fagen transferred ownership of Big Blue to MET.[5] Defendants seek to dismiss Exergy's claim under Rule 12(b)(3) arguing the venue provision of the Promissory Note requires any claims arising from the Notes be brought in a *state court* in Ada County. (Dkt. 19, 24.)  In reply, Exergy contends venue is proper because Idaho law will be applied, this Court is in Ada County, and the venue provision does not limit venue to a state court. (Dkt. 25, 26.)

**A. Standard of Law**

"A motion to enforce a forum selection clause is treated as a motion to dismiss pursuant to Rule 12(b)(3); pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009)(citing *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)).

"[B]ecause enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, . . . federal law applies to interpretation of forum selection clauses."

---

[5] Exergy relies on the following section of the Promissory Note signed on December 30, 2008: "On the earlier of 1 February 2019 or on any change in ownership of greater than fifty percent (50%) member or ownership interest in Big Blue Windfarm, any of its affiliates or successors, the Debtor shall pay to the Creditor all remaining principal and interest balances due under this Note." (Dkt. 1.)

MEMORANDUM DECISION AND ORDER - 4

*Doe v. Network Solutions, LLC*, 2008 WL 191419 *5 (quoting *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir. 1988)).

Under federal law, the general principles for interpreting contracts guide the court and "[c]ontract terms are to be given their ordinary meaning . . . [and w]henever possible, the plain language of the contract should be considered first." *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir. 1999)). "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous; it is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Id.* at 1210 (citing *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1032 (9th Cir. 1989)).

"A contractual forum selection clause is 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.'" *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989)(quoting *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972)).

**B. Analysis**

Before the Court is a question of interpretation. The forum selection clause reads: "The courts of Idaho shall have exclusive jurisdiction, and Ada County is the proper venue." (Dkt. 1, Ex. A.)

Exergy contends the words "the courts of Idaho" refers to both federal and state courts in Idaho while Defendants argue the phrase refers only to state courts in Idaho. (Dkt. 19, 24, 25, 26.) The Court holds that the forum selection clause refers only to state courts in Idaho.

MEMORANDUM DECISION AND ORDER - 5

In *Doe 1,* the issue was the meaning of a forum selection clause that read in pertinent part, the parties "expressly agree that exclusive jurisdiction for any claim or dispute . . . resides in the courts of Virginia." 552 F.3d at 1080. On appeal, the court rejected the district court's interpretation of the clause as referring to state and federal courts. The *Doe 1* court interpreted the contractual clause by focusing on the word "of." *Id*. at 1081. Which *Black's Law Dictionary* defines as "denoting that from which anything proceeds; indicating origin, source, descent, and the like. . . ." *Id.* at 1081(quoting *Black's Law Dictionary* 1080 (6th ed. 1990)). Looking at the plain meaning, the court reasoned the phrase "courts 'of' Virginia" refers to courts proceeding from, with their origin in, Virginia -- i.e., the state courts *of* Virginia. Federal district courts, in contrast, proceed from, and find their origin in, the federal government." *Id*. at 1082.[6]

The forum selection clause at issue in this case parallels the language of the forum selection clause in *Doe 1*. Applying the *Doe 1* court's reasoning, this Court finds "the courts of Idaho" refers to Idaho state courts and not to federal courts in Idaho. "[W]hen the proper forum is a state court, upon the determination that the case was not brought in the proper forum, the court's only option is to dismiss the case." *Professional Courier & Logistics, Inc. v. NICA, Inc.*, 2012 WL 1120675, at *4 (E.D. Cal. 2012).

---

[6] *See also Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003)(interpreting "Courts of Texas, U.S.A." to mean Texas state courts; holding that federal district courts are not *of* Texas, but *in* Texas); *LFC Lessors, Inc. v. Pac. Sewer Maint. Corp.*, 739 F.2d 4, 7 (1st Cir. 1984).

MEMORANDUM DECISION AND ORDER - 6

Accordingly, Defendants' Motions to Dismiss Count I of Exergy's Amended Complaint under Rule 12(b)(3) are granted.[7]

## 2. Defendants' Motions to Dismiss Unjust Enrichment/Quantum Meruit Claim (Count II)

In Count II, Exergy argues "Defendants have been unjustly enriched at the expense of Exergy to the extent Defendants received the use and/or benefit of the funds advanced by Exergy on behalf of the Big Blue Project during 2012, distinct from those obligations contained in the Promissory Notes executed between 2006 and 2011." (Dkt. 13.) Defendants have brought two separate motions to dismiss this claim. (Dkt. 19, 24.)

### A. Defendants Fagen's and MET's Motion under *Res Judicata*

Fagen and MET assert Exergy's unjust enrichment claim should be dismissed under *res judicata* because the claim is identical to Exergy's counterclaim against them in a case between the parties pending in Minnesota. (Dkt. 19.) Defendants contend even though there is no final judgment in the Minnesota case, the Court should dismiss the claim in favor of judicial economy and to avoid potential inconsistent results or duplicate recoveries for Exergy. (Dkt 19.)

Exergy opposes Defendants' motion arguing that *res judicata* cannot apply because there is no final judgment in the Minnesota case. (Dkt. 25.) In addition, Exergy asserts the Court

---

[7] Because the Court finds that the breach of contract claim under the Promissory Notes must be dismissed under Rule 12(b)(3), it need not address Defendants' alternative argument that Defendants are not parties to the Notes.

MEMORANDUM DECISION AND ORDER - 7

should not dismiss its claim as duplicative because its unjust enrichment claim in the case before this Court is different than its unjust enrichment claim in the Minnesota case. (Dkt. 25.)

### i. Standard of Law

"*Res judicata* is comprised of claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel)." *Hindmarsh v. Mock*, 57 P.3d 803, 805 (Idaho 2002)(citing *Aldape v. Akins*, 668 P.2d 130, 132 (Id. Ct. App. 1983)). "[I]n order for *res judicata* to bar litigation, the following requirements must be met: (1) the same claim or cause of action arising out of the same facts must be involved in both suits; (2) there must be a final judgment on the merits in the prior action; and (3) the parties in the instant action must be the same as or in privity with the parties in the prior action in question." *Coeur d'Alene Tribe v. Asarco Inc.,* 280 F. Supp.2d 1094, 1118 (D. Idaho 2003)(citations omitted). "The purposes of these judicially created rules are to conserve judicial resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal relations." *Coeur d'Alene Tribe*, 280 F. Supp.2d at 1118.[8]

---

[8] The Idaho Supreme Court has also recognized that the three fundamental purposes served by *res judicata* are:

> First, it "[preserves] the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results." Second, it serves the public interest in protecting the courts against the burdens of repetitious litigation; and third, it advances the private interest in repose from the harassment of repetitive claims. The doctrine of claim preclusion bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made.

### ii. Analysis

The Court denies the Defendants' request to dismiss Count II under a theory of *res judicata* because there is no final judgment on the merits; the case in Minnesota is still pending. The Court, however, will exercise its discretion and broad latitude to dismiss Exergy's claim for unjust enrichment because the Court finds the claim is duplicative to the claim in the Minnesota case.

"[A] federal suit may be dismissed for reasons of wise judicial administration, as a general rule, whenever it is duplicative of a parallel action already pending in another federal court." *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F.Supp. 1210, 1213 (N.D. Ill. 1983)(citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817-18 (1976)). "[D]istrict courts are to be accorded a great deal of latitude and discretion" when determining if a suit is duplicative of another. *Id*. at 1213. "Generally a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Cooper v. City of Tucson,* 2015 WL 1522198, at *3 (D. Ariz. 2015)(quoting *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1458 (9th Cir. 1985))(internal quotations omitted).

---

*Lohman v. Flynn*, 78 P.3d 379, 386 (Idaho 2003).

MEMORANDUM DECISION AND ORDER - 9

Here, the parties are the same in the two suits[9] and the relief available and pled for is identical. Exergy is making the same claim for unjust enrichment in this case, in an amount of $5,266,831.82, as it incorporated in a broader claim on its face in the Minnesota case.

Exergy's Amended Complaint in this case reads: "Defendants have been unjustly enriched at the expense of Exergy to the extent Defendants received the use and/or benefit of the funds advanced by Exergy on behalf of the Big Blue Project during 2012, distinct from those obligations contained in the Promissory Notes executed between 2006 and 2011." (Dkt. 13.) In its Motion for Summary Judgment in the Minnesota case, Exergy states: "Exergy invested six years and in excess of $18 million dollars in costs developing the Big Blue Project. Fagen took ownership of the Big Blue Project, but failed to pay Exergy back any of those costs. As such, Fagen is liable to Exergy for these costs in unjust enrichment." [10] (Dkt. 19, Ex. AA, p. 43.) "Included within this amount is approximately . . . (b) $5,266,831.82 in funds advanced to/on behalf of Big Blue Windfarm, LLC in 2012." (Dkt. 19, Ex. AA, p. 18, ¶ 76.)

---

[9] The Court acknowledges that Big Blue is not a party to the Minnesota cause of action; however, this does not change the Court's analysis. The Court is not dismissing the unjust enrichment claim against Big Blue as duplicative, but is only dismissing the unjust enrichment claim against Fagen and MET under this theory and they are the same parties as in the Minnesota case.

[10] The Court takes judicial notice of the filings from the Minnesota case submitted as Exhibits with Defendants Motion to Dismiss. "The Ninth Circuit has consistently held that courts may take judicial notice of documents filed in other court proceedings to establish the fact of such litigation and face of averments made, but not to establish the truth of the matters asserted." *Thomason v. Moeller*, 2017 WL 241322, at *5 (D. Idaho 2017)(citing *M/V Am. Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1491 (9th Cir. 1983)). *See also, U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

MEMORANDUM DECISION AND ORDER - 10

In the interest of judicial economy and wise judicial administration, the Court therefore grants Defendants Fagen's and MET's Motion to Dismiss Count II as duplicative. The cause of action in Minnesota preceded this case and is further along. The claim should be litigated in one case so as to avoid a duplicative award or any inconsistency with the Minnesota court's findings.

### B. Defendant Big Blue's Motion under Rule 12(b)(6)

The above claim in Count II is also raised against Defendant Big Blue. (Dkt. 13.) Big Blue contends the Court should dismiss Count II under Rule 12(b)(6) for four reasons. First, Big Blue argues that it was not mentioned in the unjust enrichment claim, which was pled before it was added as a defendant and there are no factual or legal allegations that it was unjustly enriched. (Dkt. 24.) Second, Big Blue maintains Count II does not "firmly and clearly state" an unjust enrichment claim as required by Rule 8. (Dkt. 24.) Third, Big Blue asserts Exergy's unjust enrichment claim is barred because Exergy has a legal remedy precluding equitable relief with its breach of contract claim. (Dkt. 24.) Fourth, Big Blue argues to prove unjust enrichment Exergy must prove Big Blue acted unfairly or wrongfully and no such allegation was made or exists. (Dkt. 24.)

Exergy contends Big Blue's motion to dismiss should be denied because its claim is sufficiently pled under Rule 8; it has stated enough facts to give rise to a claim for relief that is plausible on its face; its claim is plausible as an alternative theory of recovery if the breach of contract claim fails; and Big Blue misstates the elements of an unjust enrichment claim. (Dkt. 26.)

MEMORANDUM DECISION AND ORDER - 11

### i.     Standard of Law

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In general, a motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).     "A prima facie case of unjust enrichment consists of three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Headwaters Const. Co. v. National City Mortg. Co.*, 720 F. Supp.2d 1182, 1187 (D. Idaho 2010).

MEMORANDUM DECISION AND ORDER - 12

"Unjust enrichment does not apply 'where there is an enforceable express contract between the parties which covers the same subject matter.'" *U.S. Welding, Inc. v. Battelle Energy Alliance, LLC,* 728 F. Supp.2d 1110, 1116 (D. Idaho 2010)(quoting *Vanderford Co., Inc. v. Knudson*, 165 P.3d 261, 271 (Idaho 2007)).  However "[t]he mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery. A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already received the benefit of [its] contractual bargain." *Adelman v. Christy*, 90 F. Supp.2d 1034, 1045 (D. Arizona 2000).

### ii.      Analysis

The Court acknowledges that Exergy's pleading in the alternative is not improper under Federal Rule 8.[11] In order for the Court to determine if unjust enrichment is an appropriate remedy it must first consider if there is an enforceable contract that covers the same subject matter that offers a remedy to the plaintiff. See *U.S. Welding, Inc.,* 728 F. Supp.2d at 1116.

Because the Court has found that the breach of contract claim under the Promissory Notes was brought in the wrong court and must be dismissed, the unjust enrichment claim out of the same must follow. As such, the Court grants Big Blue's Motion to Dismiss as to Count II.

---

[11] "[A]n unjust enrichment claim may be brought in the alternative, subject to a single recovery, so long as the unjust enrichment claim does not seek to relieve the plaintiff of the effects of an express provision in the contract." *Cliffton Equities, Inc. v. Summerlin Asset Management III, LLC*, 2012 WL 6570940, at *2 (D. Ariz. 2012)(quoting *U.S. Bank Nat'l Ass'n v. Casa Grande Regional Medical Center*, 2006 WL 1698288, at *6 (D. Ariz. 2006)(internal quotations omitted)).

MEMORANDUM DECISION AND ORDER - 13

**3. Defendants' Motion to Dismiss Under Rule 13(a)**

Exergy asserts claims of breach of contract and breach of fiduciary duty in Counts III and IV. (Dkt. 13.) Exergy argues Fagen "breached the terms of the MOU by (a) refusing to advance funds necessary to develop the projects contemplated by the MOU, (b) attaching oppressive and unilaterally dictated conditions not contemplated by the MOU to those funds that Fagen did advance, (c) failing to tender contractor services under the EPC Contract for all projects contemplated by the MOU,[12] and (d) subsequently withdrawing all financial support for Exergy's development activities. (Dkt. 13.)

Fagen contends these claims must be dismissed as compulsory counterclaims under Rule 13(a) because Exergy should have brought them as counterclaims or affirmative defenses in one of the six prior lawsuits brought in Idaho state court.[13] (Dkt. 19.) Exergy does not address the 13(a) argument.

---

[12] Fagen and Exergy signed a Balance of Plant Engineering, Procurement and Construction Services Agreement (EPC Contract) for the Idaho Six Winds Project, which was one of the projects named in the MOU.

[13] Fagen sued for breach of contract under the MOU for Exergy's failure to pay in a six lawsuits, five of which were consolidated. *Fagen, Inc. v. Lava Beds Wind Park, LLC; Exergy Development Group of Idaho, LLC; XRG Development Partners, LLC; Tabor Wind Farms, LLC; and "John Does 1-10,"* Case No. CV 2013-261;  *Fagen, Inc. v. Rogerson Flats Wind Park, LLC, Cottonwood Wind Park, LLC, Salmon Creek Wind Park, LLC, Deep Creek Wind Park, LLC, Notch Butte Wind Park, LLC, Exergy Development Group of Idaho, LLC, XRG Development Partners, LLC, and "John Does 1-10,"* Case No. CV 2013-573.

### A. Standard of Law

I.R.C.P. 13(a) provides that

> A pleading must state as a counterclaim any claim that, at the time of its service, the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

A party's failure to plead a claim that arises out of the same transaction or occurrence under Rule 13(a) forecloses that party from bringing those claims in a subsequent action. See *Blaser v. Cameron*, 776 P.2d 462, 464 (Idaho Ct. App. 1989). I.R.C.P. 13(a) is "essentially identical" to Federal Rule 13(a). *Stilwyn, Inc. v. Rokan Corp.*, 353 P.3d 1067, 1077 (Idaho 2015).

"The purpose of Rule 13(a) is to prevent multiplicity of litigation and to promptly bring about resolution of disputes before the court." *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1201 (9th Cir. 2010). "Rule 13(a), moreover is 'particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim becomes the basis on the complaint.'" *Id.* (quoting *Local Union No. 11, Int'l Brotherhood Electrical Workers v. G.P. Thompson Electric, Inc.*, 363 F.2d 181, 184 (9th Cir. 1966)).

The crux of a Rule 13(a) analysis is whether the claim arises out of the same "transaction or occurrence." There are four tests that have been suggested by courts as to what constitutes a "transaction or occurrence" and "[o]f the four tests, the logical relationship test is the most widely recognized." *Schoeman v. New York Life Ins. Co.*, 726 P.2d 1, 6-7 (Wash. 1986). The Ninth Circuit has adopted the logical relationship test. *See Moore v. Old Canal Financial Corp.*,

MEMORANDUM DECISION AND ORDER - 15

2006 WL 851114 (D. Idaho 2006); *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246 (9th Cir. 1987).

The logical relationship test is a flexible approach to Rule 13 that analyzes "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro,* 827 F. 2d at 1249 (internal quotations omitted, quoting *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978)). "In making this determination courts commonly consider 1) whether substantially the same evidence will be used to try the claim and the counterclaim and 2) whether there is any logical relation between the claim and the counterclaim." *Moore*, 2006 WL 851114, at *2 (citing Wright & Miller, *Federal Practice and Procedure*: Civil § 1410 at 41-47 (2d ed. 1985)).

**B. Analysis**

The claims in this case arise out of the same transactions or occurrences—Fagen's work as Exergy's contractor under the MOU—and rely on the same evidence as the state cases brought by Fagen in Idaho. Fagen's state case claims relied upon the MOU and EPC Contract to support its Motions for Summary Judgment. So too here, Exergy relies on the MOU, the EPC Contract, and Fagen's conduct as its contractor on the projects referenced in the MOU.

Under the logical relationship test, Exergy's breach of contract claims against Fagen arise from the same transactions or occurrences that was the subject matter of the previous suits litigated and resolved in the Idaho state courts. Exergy is relying on the same or similar evidence as was available in prior lawsuits, namely the MOU and EPC Contract, as the basis for both

claims, i.e. that Fagen breached the MOU and the MOU created a fiduciary relationship.[14] Exergy's breach claims here are logically related to the claims of the previous lawsuits. As such, Count III and IV must be dismissed as compulsory counterclaims under Rule 13(a).

## CONCLUSION

For these reasons, the Motions to Dismiss are granted.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motions to Dismiss (Dkt. 19, 24) are **GRANTED**.

DATED: March 22, 2017

Edward J. Lodge
United States District Judge

---

[14] Exergy maintains that the MOU created a partnership between it and Fagen, which in turn created a fiduciary relationship between the parties. (Dkt. 25.)